The next case on our calendar this morning is United States Securities and Exchange Commission v. Premier Holding Corporation, and Mr. Samuel, I believe you're up first. Thank you very much, Your Honor, and may it please this Court. The District Court's opinion in this case did not discuss or even describe the evidence that it suppressed, nor contains no tailoring analysis at all. It does not explain why fairness to the SEC required exclusion of any particular piece of evidence that my client might offer at trial, and it gives no reasons why my client's indication of the Fifth Amendment means he cannot call any witness in his defense, even a witness, for example, who would testify to facts outside my client's personal knowledge and therefore outside the scope of any rationally possible prejudice to the SEC in the assertion of his Fifth Amendment privilege. Well, let me start from a different premise and see if you can help me out. It is your client's burden, I take it, when faced with a disgorgement order to present evidence of legitimate business expenses not related to the fraud on which the order relies, right? Yes. Okay, and what did your client do? Not what he would do now, but what to submit. The submission was tax returns that claimed expenses and a general description of the kinds of expenses that were incurred. How does that demonstrate that they were legitimate? It's his burden to show that they were legitimate and not related to the reason for disgorgement. I don't see how from this evidence a judge could conclude that they were legitimate. He presented some evidence, but the question is whether or not he met his burden in my mind. Tell me how he met his burden. Well, so I think that's, in part, that is infected by the inability to offer, you know, evidence at summary judgment stage, right? So remember, the summary judgment order and the preclusion order and the remedies order are all kind of resolved on the same record and all resolved together. And so by the time we get to the disgorgement order, by the time we get to the sanctions order, it's no longer possible for him to introduce any evidence at all because there's been this sanction by the Fifth Amendment on the Fifth Amendment question. Okay, but put aside the Fifth Amendment question for a moment. We can get back to that. Let's assume that the ruling on the Fifth Amendment was correct. I'm the district judge. I'm now at the disgorgement stage. The government says, here's the gross amount of money taken in, and it's your burden to say, well, some of that money was spent on legitimate business expenses. And I'm still struggling to figure out how, as a district judge, I could look at the evidence that was before him and make any conclusion as to whether these expenses were legitimate or even incurred, I mean, they... Or even along the same lines as what Judge Hurwitz is asking you, what was the evidentiary foundation for the legitimacy of the documents that were submitted? Answer her question. It's better than mine. Well, of course, my official position is that they're both excellent questions. So what I'll say to you is, I agree with you that if you get to the stage where the evidence is, let us assume, properly suppressed at some rate, if you get to the stage where, you know, inability, all the inferences are being drawn in the government's favor in the way that we describe. If you get to that stage, I agree that under those circumstances, the evidence, because we can't submit any, and it's being interpreted in the light most favorable to the government, you know, is going to support the disgorgement order, because that's exactly what happened. I think that these are... That is why I really don't know that it is possible to pull apart the errors we identify in the judgment below. Well, but that's helpful, because it therefore seems to me that your argument with respect to disgorgement necessarily rests on your argument with respect to the Fifth Amendment, correct? I think that that is... Okay, so let's take that. I would not resist that. Yeah. Tell us why the court was wrong in its Fifth Amendment ruling, then. Here's one. So the district court seemed to proceed under the misimpression, I would say, but the legal standard is supposed to apply. It is true. It is absolutely true that there are cases suppressing evidence for consideration on summary judgment, because the proponent of that evidence has pleaded the Fifth and will not answer questions about it. It is also true that even just producing a document is not enough, because it is fair for the government or the moving party to be able to ask questions in a deposition about that document. I mean, you know, I'm not an especially experienced trial lawyer myself, but even I know that much. But that does not mean if you invoke the Fifth Amendment at some stage of civil proceedings, you automatically lose its summary judgment. What the court needs to do is go through and decide which pieces of evidence can be adduced without unfairness to the other side. And if the district court had undertaken that analysis, it is very hard to see how it could have reached the conclusion that it did, because it was easy examples. The government had documents that were produced by Mr. Letkavich that it had already asked him about in his four previous depositions for quite some time. And he gave about 20 hours of deposition testimony. And they asked him about documents concerning the valuation of the lead power. They asked him questions about the sale of that note for more than the note was they alleged was worth, et cetera, et cetera. That fact doesn't get to be explored, certainly, without an opportunity for the SEC to ask questions about that document. But they did. Why can't counsel introduce that document? Counsel, let me let me see if I can make sure I understand this. So there were some depositions earlier and that your client sat for. But then I think at the end, he said, you know, he pled the 15th and left. And my understanding was, and tell me if I'm wrong about this. My understanding was the government still could have asked him more in-depth questions about the same issues. In other words, it wasn't like there were some issues that have been fully explored and some documents have been fully explored and would not have been the subject of the later depositions. It said it had asked some questions in earlier depositions, but it was it would have been available if he had not pled the fifth to ask more questions, more deeper questions about those documents. If that's A, is that correct? And if that's correct, then the government still didn't get to fully explore those those issues. So your your argument that, well, we should have peeled off just the things that the government didn't get to explore in that last deposition. If everything would have been and I'll ask this to the other side, too, to the government. But if everything would have been on the table in that last deposition, I don't see how your argument works. You see the problem with the argument. Unless you can slice and say all of this stuff was already explored and the government had a full opportunity. So this this stuff should have been not excluded by the judge. But this stuff, this stuff was not this. This stuff was the stuff that they didn't get to explore. My understanding is that everything would have been on the table. So the government didn't get the probe in that last deposition. Everything. So I have a couple of different responses to that. I think a practical one, which is, you know, I've actually never seen a case before where there was a civil opponent who sat for a fifth and sixth deposition at all. And I think it is actually not prejudicial to the government at all to say, look, you've had these documents. You have had the opportunity to ask my client. OK, counsel, that's fine. But that's that's not what happened here. I mean, one thing if if your client had gone to the court and said, come on, I'm being harassed by the government here. I shouldn't have to sit for these additional depositions. But that's not what your client did. Your client pled the fifth. Yes, I understand that. And I take that point. But what I'm saying is that it illustrates that there has not been. This is kind of the second point I would make. There has not been any demonstrable prejudice to the SEC, at least not as to documents that they did have an opportunity to explore. And there certainly hasn't been any prejudice to the SEC, for example, about documents that other people had an opportunity to be asked questions about. And if there is, the government has never explained why there has been any prejudice to them. I mean, it's true. At a seventh deposition, you could ask more questions. And it's true that if you invoke your Fifth Amendment privilege at that seventh deposition, that there may be some evidence, maybe some questions that the government would prefer to ask and can't. But that's not the question. The question is. Counsel, the question for us, and if I were the trial court, I might find your argument compelling. The question for us is not how we would have ruled were we sitting on the trial branch, but I take it whether the district court abused its discretion under these circumstances. And so is your argument seems to be it abused its discretion because the government wouldn't have been hurt if you were allowed to present evidence contrary to their assertions. And how do we judge that in retrospect? Well, I'll give you a little time for rebuttal. So don't get nervous. So first of all, yes, we do argue that that constituted an abuse of discretion. And the way that we what the reason we have trouble judging that I take the premise of your question very seriously. The reason we have trouble with that is because the district court did not explain or even describe what the evidence was that was being suppressed or why it would prejudice the government at all. And it is hard to figure out why it would happen. And second, I just I do want to note, in addition to that, there is the problem that at the summary judgment stage, the district court seems clearly to have construed the evidence in favor of the moving party at summary judgment, which, of course, is the opposite of the Rule 56 standard. And at that point, especially when my client is prohibited from introducing any evidence of his own at all, that amounts to you can't present any evidence. The government's evidence will be construed in its favor. So essentially, as long as our friends on the other side of the SEC have remembered to allege every element of the offense, which they're pretty good at this, and so they do, that is an entry. Yeah, I'm not I'm not I'm not sure that gets me very far, because at the summary judgment stage, if one side submits evidence and the other side doesn't submit any rebutting evidence, you're entitled to treat the evidence submitted by the moving party as you have to rebut it. You have to create a material issue of fact. I understand he prevented you from doing that, and that's your problem. But but I don't I don't think the fact that he he after preventing you from doing it, he treated the government's evidence as persuasive gets me very far. So but but we've taken you we've taken you over. We'll give you some time for rebuttal. Let's hear from Miss Parisi. May it please the court. Emily True Parisi for the United States Securities and Exchange Commission. And I'd like to start with a question left off in terms in terms of the and just clarify a factual matter for this court. Mr. Lankovich at for zero depositions in his individual capacity where he answered any substantive questions. Zero. The number's not four, five, six, seven. It's zero. And the reason that is important is because so what he he sat for two sessions of investigative testimony. That was before the commission even filed its complaint years before. There was one in 2014, one in 2015 where he was asked questions. But that was before the commission filed its complaint. And importantly, and this was raised both importantly for the commission had many of the key documents in this case. They couldn't ask Lankovich about that. And he sat for a deposition in a 36 capacity. He was the designee, but that was limited. And the district court made an express finding on this. That was limited to document production issues only. It was only then when he got to his individual deposition that the commission was able to start to ask questions about the actual claims in this case. And he never answered them. The first time he stormed out of his deposition, claiming he had a head injury, even though he had already asked the court for relief. And the court said, no, you have to show up. But he stormed out anyways. And so he never answered any substantive questions that the commission had. Then when that deposition was continued, he again did not answer any substantive questions, this time invoking the Fifth Amendment. So he has not answered any substantive questions in a deposition capacity. And it's important. It's not just a semantic difference. There's a difference in the soft point case that we cite in our brief is directly on point investigative testimony is not a substitute for depositions, particularly here, where the investigative testimony was many years before the commission filed its complaint. And importantly, and we raise this below and on appeal, where the deposition, excuse me, where the investigative testimony was well before the commission received documents and discovery from other premier employees should have been produced by premier, but wasn't or receive documents from other premier employees that are that are critical to this case. And so the commission has never had any opportunity to ask any substantive questions to Lekovich about that at all. And so it's simply not the case that the government was harassing him with multiple depositions. That's just actually not not what happened here. Can I ask you, can I ask you a broader question? And I, you know, we haven't seen many of these cases involving offsets against disgorgement orders because the Supreme Court only recently determined that there should be offsets against disgorgement orders. What kind of proof is a is the party against whom the order is being issued required to come forward with and in what sort of form? You know, and I'd separate that for a moment from the actual facts of this case. I'm just trying to figure out what the party who wants the offset is supposed to do under these circumstances. Sure, Your Honor. I mean, you know, first the commission has to come forward with its reasonable approximation and then and then it's on the defendant to support with competent evidence, you know, a deduction for legitimate business. I don't believe there's a specific form it needs to be in, but it needs to be competent. It needs to be able to be discerned. And that simply was not met here. Let me let me ask you. And again, I'm not sure it's determinative in this case. Let's assume for a moment that we accept as true the allegations that the other sites made that we had these expenses. These are expenses we actually incurred. How is the court to go about determining whether they are legitimate? Must they be unrelated to the underlying securities violation? Does legitimate just mean for the kind of stuff that people always pay for, like secretaries and janitors and rent? How do we determine legitimacy? You know, Your Honor, I think, you know, there's certainly language in lieu that says if it's sort of part and parcel of the fraud that, you know, that is not necessarily a legitimate business expense. But if there are expenses that go to running a part of the business that is not tied up with fraud, those can be deducted. And we've seen cases where, you know, where the courts have made deductions and the commission, you know, taking lieu as guidance is deducting legitimate business expenses, you know, when it's making its reasonable approximation to the courts, you know, understanding how lieu works. It's just that, as you said, in this case, the evidence was not competent to show any actual business expenses. Did Mr. Letkovich have an opportunity to present business expense information after the SEC presented what it was seeking? So I know that there was the Fifth Amendment order, but did the court explicitly say, and that means that you will not be entitled to your lieu opportunity to provide business expenses? And I'm gathering not because there was a document submitted that's titled legitimate business expenses. And so is it, I just want to be clear that there was an opportunity for the defendant to present evidence about legitimate business expenses, notwithstanding the previous Fifth Amendment order? Your Honor is absolutely correct. There was an opportunity for the defendants to submit legitimate business expenses evidence. If you look at the timing of how this went, right, the summary judgment opinion happened, and then the court at the end of that opinion specifically says we're going to need further submissions on monetary remedies and defers that. And then there was an entirely different round of briefing. There's absolutely no indication in the record whatsoever that defendants were procluded for putting on any evidence as it pertains to remedies. And if you look at the district court's remedies opinion, it's very clear. There's no mention of the preclusion. There's no saying, I'm not going to look at this because of my earlier order. And is it normal for a person in your experience to, at that point, submit a sworn declaration or a deposition or something to say, here's what this document is, here's what it means, here's why it's legitimate. So is it that in most circumstances, setting aside this one, that does happen? Yes, Your Honor. Just like you put an affidavit to summary judgment, right? You need to have some ability to verify the materials, you know, as the commission put on an expert report, sometimes defendants put on similar experts. And there was no order precluding that from happening in this case. Is that correct? Absolutely correct, Your Honor. There was nothing precluding. And you saw, Your Honor. Also, counsel, can I ask you some follow-up questions? Now, I'm a little confused on that. So my thought would have been, I'm not sure this happened here, but if, you know, the defendant here had, you know, provided a bunch of information, in theory, that was, you know, seemed pretty compelling on offsetting disgorgement, couldn't the government have come back and said, well, this is, you know, we are crippled or hindered in our ability to respond to that information because we didn't get to depose him about this information. So we don't, you know, normally, we would have been able to push back on that these were actually legitimate business expenses in those depositions, but we didn't get to depose him. So when he exercises fifth, so for the same reason that you excluded that, that sort of undermines this evidence. I had kind of thought, and it seems like your opposing counsel, that was kind of his view, that if, that it kind of affected it all the way through. So I kind of thought that makes sense to me, but it sounds like you're arguing that it doesn't. So which way does it cut? I don't think it affected it in this case because we didn't even get to the part where, you know, it's like we wanted to depose Lekovic about it because the submission was so deficient, right? The submission defendants made was so deficient, we don't have to get to the question your honor is asking. It was just, and the SEC raised this in its reply brief, right? That the documents were just sort of put in, there was no declaration explaining, like, you know, as Judge Erickson said, one of the documents they rely on just says legitimate business expenses at the top, and we said it, you know, in our briefing below, there's no... So to be clear, counsel, you're not necessarily saying that the Fifth Amendment exclusion couldn't have been relevant. It's just you're saying we didn't get to that point here because his information didn't even meet his burden, so we didn't have to come back and say, you know what, he makes some good points, but we think we could have poked some holes in it in those depositions and we didn't get to. In this case. That's exactly right. That's exactly right. Here, you know, the submission itself was just insufficient to sort of substantiate any business expense. Can I tell from this record or from the commission's estimation of the disgorgement amount, what percentage of Premier's business was devoted to the, well, let me call it illegal operations and what percentage was devoted to non-illegal, to illegal operations? I think you can tell that the misstatements related to assets that greatly dwarfed the rest of the assets, you know, the rest of the business, and that's, you know, you can tell that from this record. Okay, so let me just use, let me just use that for a moment. So let's just assume the invest, there's a million dollars in assets and the investigation shows that 900,000 of the assets came out of the illegal operation. Should a district court under that circumstance operate under the assumption that 10% of the expenses, legitimate expenses of the business were non-related to the fraud? In other words, I'm trying to figure out how the court deals with it under those circumstances. It's clear that some of the business here was not related to the fraud, even though it may have been a small amount, and they had to have an office, they had to have heat, lights, et cetera. Should the court under those circumstances, assuming that foundation is laid that these were actually incurred, should a court under those circumstances apply some sort of percentage approach? Again, it relates both to this case and to dealing with this issue in the future, and you represent the government. So I want to know what you think. So I think it's important in this case to talk about how disgorgement was calculated and to make clear that, so what the expert did is it took the misstatements at issue and the money raised from the securities offerings during that time period, and it's important, it took those, the money raised numbers from the public filings, and those numbers are already net numbers. They're not gross. They're net numbers of the cost of raising the money. So you're already dealing with net numbers. Then the only other possible category is sort of like overhead and business expenses, and I'm not sure you can do sort of a rough proportionality the way Your Honor is suggesting, but certainly if you show that there are sort of overhead expenses that are legitimate and separate from the fraud, that is something that courts can do that. Okay. We've taken you over, and I appreciate your argument and your responsiveness, and we'll hear from the appellant, and let's put two minutes on the clock for him. I appreciate that, Your Honor, and just to return to this point, because the disgorgement issue, of course, is very important. Let's remember that what the district court ordered here with disgorgement was that 100% of the money that was raised in the relevant period, $6,888,111, every dollar of it had to be disgorged. You're not challenging the calculation of the disgorgement amount except to the extent you weren't allowed to subtract legitimate expenses, correct? That's right. So the fact that the judge found that all that money should be subject to disgorgement, you're not challenging. So move on to the expenses part of it. Yes, right. That's exactly right. And I also find this question under lieu, conceptually somewhat difficult, but if you read the district court's order, if you read what the district court actually said, and especially given the course of conduct, I mean, as a practical matter, given the course of conduct in this case, the fact that the district court had already said, you can't even introduce any evidence on summary judgment, right? You've got penalties, but actual liability. And then there is no consideration and no opportunity to consider any of the evidence that's submitted, I think raises a precise question that was raised before, I think is exactly the right one. Well, if the government was going to be prejudiced by the consideration of evidence at the summary judgment stage for the liability question, because there were these documents that although they had, and it is simply not true that they did not have an opportunity to examine extensively on many of these documents, they certainly did invest in, as any defendant will tell you, investigative subpoena from the SEC, you are under oath and you have to tell them the truth. And this is what did that. If it was going to be unfair to them to introduce that evidence at summary judgment on the question of whether he lied intentionally, why would it not prejudice them? I mean, really, I guess I suppose in their view, prejudice the investors to introduce it at the disgorgement stage. So there is really no logical way to separate the Fifth Amendment question from this disgorgement problem. Well, let me, let me ask you, you've gone over, but I want to ask the question that Judge Van Dyke asked before, because I guess I'm not as clear on the record as I might have been. Do you regard the Fifth Amendment order as applying to your ability to introduce evidence at the disgorgement stage? That is, so the answer to that question is yes. And number two, if the answer were no, it would make no sense because if the district court were saying, hey, oh, it's, oh, it's fine. So the government doesn't necessarily disagree with you on that, but as a theoretical matter, but they say it didn't matter here because you didn't even meet the threshold. You didn't, you didn't even have to try to get the Fifth Amendment to apply. So what do you say to that? What I say to that is that it illustrates that the government actually wouldn't be prejudiced at the summary judgment stage either, because if they were fine with this evidence at disgorgement, there's really no reason they'd be prejudiced at summary judgment. That's what that illustrates. And that's the problem. Is that government's willingness to have this evidence considered without any prejudice to the investors that they're here to protect and disgorge back the ill-gotten funds from. Government is notably fine with that at disgorgement, but not for some reason at liability. One last question, I think, because we've taken you, we've taken you over. Can I tell, I can't tell from this record, so tell me if I'm wrong. If you had been allowed to present evidence from your client, his testimony at the disgorgement stage, what would it have been? You never made an offer of proof at the summary judgment stage. We know what it would have been because you've got, we got your affidavits and presentation and none of that seems to me to relate very much to disgorgement. So can we tell what you would have said had you been? Well, we can't tell, but I can tell you that we would be, we will adduce, for example, you know, affidavits on what this money was spent on under oath. You know, we are happy to induce, you know, like direct evidence from the defendants. I know what your plan is, but we, we can't tell that from the record. You didn't make a rule 104 offer of proof. And how much? And how much would you say what the expenses were? I mean, the expenses that he were paid, I mean, his salary, you know, he didn't even sell his own shares, you know, all of which we get, I mean, you know, substantial, substantial expenses related, you know, research and development of the product, substantial expenses, you know, related to, for example, legal fees. And I think, you know, certainly at least a lawyer would agree that, you know, paying your counsel, you know, should have been fees to which they're entitled is legal. And so, you know, in other words, it's not 10%, right? I'm not, you know, my work is fast enough to quickly do the long division, but I'll tell you, it is not 10%. And because we were in a position where we couldn't induce any evidence and. I think we, I think, I think you've responded to Judge Erickson's question and we've taken you well over. So, and I, I thank both, both counsel for their arguments and briefs in this case. In this case will be submitted, submitted. Thank you.
judges: HURWITZ, VANDYKE, Ericksen